IN THE SUPERIOR COURT OF GUAM

FILED
SUPERIOR COURT

2013 JAN 11 PM 2: 16

CLERK OF COURT

PACIFIC DINING, LLC dba )  CIVIL CASE NO. CV0559-12
LONE STAR STEAKHOUSE )
                        Plaintiff, )
                                  )  **DECISION AND ORDER**
             vs. )  **(Motion for Summary Judgment)**
                                  )
QUALITY DISTRIBUTORS, )
                    Defendants. )
_____ )
QUALITY DISTRIBUTORS, )
                                  )
         Counterclaim Plaintiff, )
                                  )
             vs. )
                                  )
PACIFIC DINING, LLC dba )
LONE STAR STEAKHOUSE, )
         Counterclaim Defendant. )

This matter was heard on the 14th day of November, 2012, before the HONORABLE SENIOR PRO TEMPORE JUDGE ELIZABETH BARRETT on Defendant's (hereinafter "Quality") Motion for Summary Judgment. Quality appeared and was represented by Attorney Daniel J. Berman. Plaintiff (hereinafter "Lone Star") and was represented by Attorney Joyce C.H. Tang. Having considered the oral arguments and briefs, the Court **GRANTS** summary judgment on the claim of Lone Star's Violation of Guam Deceptive Trade Practices Consumer Protection Act claim, and **DENIES** Quality's Motion for Summary Judgment on the claims of Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Misrepresentation.

# I. FACTUAL & PROCEDUAL BACKGROUND

This matter is an action to recover a balance due under a commercial contract between the parties regarding ocean freight costs for goods shipped from the United States mainland to Guam. From 1995 to 2010, Lone Star entered into Credit and Distribution agreements with Quality, at which time Plaintiff/Counterclaim-Defendant Brian Artero (hereinafter "Artero") executed a personal guaranty. These agreements were renewed annually and provided an exclusivity clause in which obligated Lone Star and Artero to purchase its goods exclusively from Quality. Until 2007, the agreements remained unaltered with the agreements providing Lone Star would be charged "FREIGHT RATE (BASED ON CURRENT SHIPPING RATES, SUBJECT TO CHANGES." 2007 Distribution Agreement ¶ 5. In 2008, Quality altered this provision in their distribution Agreement to provide:

> CONSOLIDATION, HANDLING AND FREIGHT RATE (BASED ON CURRENT SHIPPING RATES, SUBJECT TO CHANGE ANYTIME):
>
> FROZEN GOODS   $0.27 PER POUND, GROSS WEIGHT
> CHILLED GOODS   $0.31 PER POUND,
> DRY GOODS      $0.20 PER POUND, GROSS WEIGHT
>
> SELLING PRICE:
>
> A.    FOB FROZEN ITEMS:
>
> SELLING PRICE= FOB OAKLAND + QD MARK-UP + FREIGHT (WHERE QD MARK-UP IS BASED FOB OAKLAND PRICE)
>
> FOR EXAMPLE:
> 1 CASE CHICKEN BREASTS, 12lbs @ $1.50/lb. FOB OAKLAND
>      SELLING PRICE = [(1.50 x 12lbs.) X 1.13] + (12lbs. x 0.27)
>      =23.58 PER CASE

Without review, Artero signed the agreement on behalf of Lone Star, as it had always done so. In May 2010, Artero decided to utilize another company for distribution services and

expressed to Mr. George Lai, the President of Quality, that the contracts for Lone Star and Chili's Guam would be moved to Luen Fung, a competitor of Quality.

In June 2010, Artero corresponded with the General Manager of Quality, Mr. Landon Nadler (hereinafter "Nadler"), regarding close-out matters at which time Nadler informed Artero of a change in the 2008 Distribution Agreement. Artero and Nadler met in June 2010, where Nadler pointed out the specific provision at issue and Lone Star was being "overcharged," as the agreement included additional costs deviating from their prior course of dealing. Lone Star had the impression the agreement of the parties provided the cost of freight as a "pass-through" cost based on the actual cost to ship the goods to Guam.

Lone Star stopped payment on the agreement on April 30, 2012. On May 15, 2012, Lone Star filed suit with the following relevant causes of action: (1) breach of contract; (2) violation of the Deceptive Trade Practices Act; (3) breach of the covenant of good faith and fair dealing; and (4) misrepresentation. Lone Star also requested a demand for jury trial.

Quality filed its Answer and Counterclaim on June 14, 2012 for breach of contract and damages. On July 16, 2012, Quality moved for summary judgment on all of Lone Star's causes of actions. Lone Star filed its reply to Quality's counterclaims on August 7, 2012.

At the August 29, 2012 scheduling conference, Quality asserted that the issue of summary judgment had been fully briefed on a companion case, *Quality Distributors v. Chili's Guam*, CV 498-11 (hereinafter "Chili's Guam matter"), and that they would have no objection to Lone Star using the entire discovery from the Chili's Guam matter. Lone Star objected that they were separate cases. The Court ordered that oral arguments on summary judgment would take place on November 14, 2012. On September 28, 2012, Lone Star subsequently filed its First Amended Complaint, providing the same causes of action, and filed its Opposition to

Quality Distributors Motion for Summary Judgment on November 5, 2012. Quality replied on November 13, 2012.

## II. DISCUSSION

Summary judgment is appropriate if the pleadings and discovery documents in a case, along with affidavits, show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[1]" In order to defeat a motion for summary judgment, a non-moving party must come forth with sufficient evidence that a genuine issue of fact remains in dispute.[2] It is accepted that "any doubts should be resolved in favor of the non-moving party, and the movant's evidence must be considered in the light most favorable to the non-moving party.[3]" The moving party is not required to negate each element of the non-moving party's case. Rather, the moving party satisfies and discharges its burden by establishing the absence of evidence to support the non-moving party's case.[4]

If a lack of evidence is established by the moving party, the non-moving party must present specific facts showing there is a genuine issue for trial. The non-moving party may not rely on conclusory allegations contained in the pleadings, but must present some significant probative evidence tending to support the assertions.[5]

---

[1] GRCP 56(c); *Attorney General v. Perez*, 2008 Guam 16 ¶ 12. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[1]" However, there can be no "genuine issue of material fact" if there is a complete failure of proof concerning an essential element of a party's case, since such failure renders all other facts immaterial.[1] Moreover, "[f]actual disputes that are irrelevant or unnecessary will not be counted."
[2] *Id.* at 16 ¶ 13.
[3] *Id.* at 16 ¶ 12.
[4] *Kim v. Hong*, 1997 Guam 11 ¶ 6 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).
[5] *Edwards v. Pacific Fin. Corp.*, 2000 Guam 27 ¶ 7.

A genuine issue exists when there is "sufficient evidence" establishing a factual dispute requiring resolution by a fact-finder.[6] The factual dispute must concern a "material fact.[7]" Whether a fact is material is determined by the governing substantive law; if the fact may affect the outcome, it is material.[8]

## 1. Breach of Contract

### a. *Lone Star's claim is not barred by the statute of limitations.*

The Guam's Uniform Commercial Code (hereinafter "The Guam UCC") governs contracts for the sale of goods. Title 13 G.C.A. §2725(1), provides the statute of limitations for bringing a breach of contract action. Specifically, it states, "an action for beach of any contract for sale must be commenced within four years after the cause of action has accrued..[9]" The aggrieved party's lack of knowledge of the breach is not a defense.[10] All actions must commence within four years of the alleged breach.

Plaintiff is requesting damages "in having paid invoices based on inflated freight charges in the amount of $254,115.00 (does not include 8 month period in 2002) and other amounts to be proven at trial" among other forms of relief. It appears that Plaintiff is seeking damages from 1995 to present. However, Plaintiff concedes that "a change to the freight provision in the agreement" [11] occurred starting in 2008 and that they were put on notice in June 2010.

---

[6] *Id.* (citing *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir.1987)).
[7] *Id.*
[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[9] *See also* Title 7 GCA §11303, which speaks more generally to all contracts, providing time for commencing actions is within four (4) years of "an action upon any contract, obligation or liability founded upon an instrument in writing."
[10] *Id.*
[11] Pltf.'s Complaint [With Request for Jury Trial] p. 3 ¶ 10.

Plaintiff filed its Complaint on May 15, 2012. Any claims of alleged breach that occurred prior to May 15, 2008 are time-barred. Given, the 2007 Distribution Agreement was effective from June 1, 2007 to June 2008; Plaintiff may assert claims for any alleged breach that resulted under the 2007 Agreement between May 15, 2008 to June 2008,[12] as well as any alleged breach from the 2008 and 2009 Distribution Agreements.

### b. *There is a genuine issue as to material fact of whether a breach occurred.*

Quality properly cites this Court to the holding of our Guam Supreme Court in <u>Wasson v. Berg</u>, 2007 Guam 16, regarding contract interpretation. The Guam Supreme Court held:

> "When…a contract dispute comes before the court on a motion for summary judgment, summary judgment is proper if the contract language need only be construed and given legal effect.[13]"
> However, when the court must sit as a fact-finder and resort to the parties' intent because of ambiguity arising from disputed relevant evidence, the summary judgment is not appropriate.[14]"

Guam Courts apply the traditional approach of "plain meaning" to contract interpretation. If the contract in general or the clause in contention is unambiguous, plain meaning is applied to the language contained in the four corners of the contract.[15] The threshold requirement is to determine if ambiguity arises in the contract and if so, discretion remains with the Court to consider parol evidence.[16] However, terms in a sale of goods contract may be "explained or supplemented" by evidence of the parties course of dealing or usage of trade, or by evidence of consistent additional terms unless the court finds the writing to have been

---

[12] The date of the breach

[13] *Wasson v. Berg,* 2007 Guam 16 ¶ 19 (citing *Riley v. Pub. Sch. Syst.,* No 93-027, 1994 WL 111129 at *2 (N. Mar. Feb 9, 1994).

[14] *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *see also Barris Indus., Inc.* 875 F.2d at 1450).

[15] *Wasson v. Berg,* 2007 Guam 16 ¶ 19 (2007).

[16] *Koch v. Spann,* 193 Or. App. 608, 613, 92 P.3d 146, 149 (Or. Ct. App. 2004).

intended as a complete and exclusive statement of the terms of the agreement." 13 G.C.A. §2202(a-b).

George Lai, owner of Quality Distributors (hereinafter "Lai"), and Artero were long term business associates and personal friends having done business for over fourteen (14) years under an agreement to ship goods for a company Artero managed, beginning in 1995, and then acquired in 2002, called Pacific Dining, LLC dba Lone Star Steakhouse ("Lone Star").

Lai presented to Lone Star agreements, which were represented as the "best deal" as to freight, handling and shipping rates for franchise commodities.[17] Lone Star now argues that a "4 % payment to a California Company, Cal Mar," also owned by Lai, is an additional cost, not incorporated in the Lone Star agreements prior to 2008, which were never explained or mentioned by Quality. Lone Star also argues that it understood it was paying only "pass through rates," which meant to Lone Star that there were no additional costs imposed or incurred by Lone Star once the goods reached the Port of Oakland as this was the practice under the previous Lone Star agreements.

Quality admitted at the most recent hearing that Artero may not have understood that the shipping rates consisted of such additional fees, yet argues that the contract is unambiguous, and Lone Star bears the burden for its position because Artero failed to read the agreement.

The Court finds that there are genuine issues of material fact regarding the meaning and understanding between the parties with regard to freight, handling, and shipping costs in the 2008 agreement, and that these terms are ambiguous in meaning between the contracting parties. Whether the rates and terms were sufficiently clear must be viewed against the understanding of the parties at the time they entered the agreement, and tested not only on the

---

[17] Def. Counter-Claim Plft.'s Opp. to Quality Dist. Mtn. for Summary Judgment at pg.7.

plain meaning of the document itself, but also the intent of the parties. While Lone Star does not specifically argue ambiguity, it does argue that the contract deviates from their prior course of dealing by Quality's failure to disclose the differential in costs between what the 2007 Agreement and the subsequent agreements thereafter. Intent of the parties is a genuine issue of material fact, necessary to explain the ambiguity underlying the basis upon which the rates were calculated and derived, particularly where one party assures the other that the rates remained unchanged from their prior course of dealing.

## 2. Breach of the Covenant of Good Faith and Fair Dealing

Covenant of Good Faith and Fair Dealing is a mechanism for contract interpretation to ensure equity, requiring that every contract must be executed in good faith. The Guam UCC defines food faith in the case of a merchant to mean "honesty in fact and the observance of reasonable commercial standards.[18] The Supreme Court of Guam has applied the covenant of good faith and fair dealing by asserting "[it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.[19]"

In order to trigger this covenant, a contract must be formed. [20] In this matter, a contract was formed in May 2008. The breach of the Covenant of Good Faith and Fair Dealing is intrinsically tied to the same problems with breach of contract, and therefore, summary judgment is not proper.

## 3. Misrepresentation

### a. *Lone Star's claim is not barred by the statute of limitations.*

---

[18] 13 G.C.A. §2103(b).
[19] *Quijano v. Atkin-Kroll, Inc.* 2008 WL 4862508 (Guam Terr.)(*citing* and 2008 Guam 14 Guz v. *Bechtel Nat'l Inc.*, 8 P.3d 1089, 1110 (Cal.2000)).
[20] *Id.* at p. 1.

For a misrepresentation claim, the claim must be brought within three (3) years and that the injury will not accrue "until the discovery by the aggrieved party of the facts constituting the fraud or mistake.[21]"

Quality argues that a misrepresentation claim accrues when "the aggrieved party *discovers or should have discovered* the misrepresentation and is barred three years after.[22]" Quality argues Lone Star should have discovered their alleged breach due to the fact that Lone Star should have read the 2008 Distribution Agreement prior to signing it. Quality further argues the "open book" policy provision in the agreement gave Artero opportunity to have discovered such alleged breach.[23]

Lone Star responds by arguing Quality waived this argument by failing to assert a 9(b) objection under the Guam Rules of Civil Procedure for Lone Star's failure to plead fraud with sufficient particularity. Lone Star cites to a Colorado Appellate Court case, *Silver v. Colorado Ca. Ins. Co.,* where the court held "a party waives its right to object to another party's failure to comply with the rule by neglecting to raise the objection in a responsive pleading or timely motion.[24]"

The Court finds that Lone Star's waiver argument is hardly persuasive as the Colorado Court used that standard in analyzing a Rule 9(b) objection, failure to plead with sufficient particularity. That is not the issue currently before the Court. The issue is whether Lone Star merely meets the statute of limitations in bringing its misrepresentation claim.

Artero discovered the misrepresentation in June 2010 when Nadler informed Artero that "there was an issue with the Lone Star and Chili's Distribution Agreements that may be of

---

[21] 7 G.C.A. §11305(4).
[22] Def. Quality Distributors' Mot. for Summary Judgment and Memorandum Brief. p. 7 ¶ 2.
[23] *Id.* at p. 8 ¶1-2.
[24] 219 P.3d 324, 328 (Colo. Ct. App. 2009).

interest" to him.[25] Fraud is never a fact that stares one directly in the face. It is uncovered most often through inadvertent and unsuspecting means. Lone Star reasonably discovered the fraud in June of 2010, and the claim for misrepresentation falls within the three year limitation.

### b. *There is a genuine issue as to material fact of whether misrepresentation occurred.*

In order to establish a claim of misrepresentation, four elements are required: (1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud to induce reliance; (4) justifiable reliance; and (5) resulting in damages.[26]

The basis of this cause of action is in the facts surrounding that Lone Star was induced to enter into distribution agreements between 2008-2010 due to Quality's previous statements representations that Lone Star was to be charged the actual (pass through) rates incurred by Quality in shipping the food products.[27] Determining if these representations caused fraud in the inducement must be subject to a reasonable inquiry into the meaning of newly added terms and is an issue of fact especially in light of the declarations of Nadler informing Artero of additional costs not previously included. Fraud is a most difficult fact to present in evidence, but it is inevitably a matter of material fact that should not be short circuited by summary judgment.

The Court is satisfied that Artero and Lone Star have demonstrated that there are genuine issue of material fact as to cause of fraud which should be presented to a finder of fact.

### 4. Violation of the Guam's Deceptive Trade Practices Consumer Protection Act is Not Applicable and nearly contemptuous behavior on behalf of Lone Star.

---

[25] Pltf.'s Complaint [With Request For a Jury Demand] page 12 ¶60 and, p. 6 ¶24.
[26] *Hemlani v Flaherty*, 2003 Guam 17, ¶ 9 (*citing Transpacific Export Co. v. Oka Towers Corp.*, 2000 Guam 3 ¶23)("the tort of intentional misrepresentation has the same elements as fraud.")
[27] First Amended Complaint [With Request for Jury Trial] p. 14 ¶71.

In the Chili's Guam matter, the Court denied Artero's request to add any claims pursuant to Guam's Deceptive Trade Practices Act (hereinafter "GDTPA").[28]

On July 12, 2012, the Court ordered Artero to strike portions of Chili's Guam First Amended Complaint which referenced relief under GDTPA.[29]

This is the third time Artero and his counsel have brought a GDTPA claim before this Court. Artero's counsel was clearly put on notice that such a claim do not survive in light of the facts in this case and "further noncompliance would not be so generously tolerated." GDTPA does not apply to business consumers. Lonestar, Chili's Guam and Artero are business consumers.

Guam Rule of Civil Procedure (GRCP) Rule 12(f) permits a court to strike "any redundant, immaterial and impertinent, or scandalous matter" from a pleading." This pattern of non-compliance, straddling two matters, is nearly contemptuous. It is clear among all of the parties, that the cases are related as Quality provided that they have "no objection to Lone Star using the entire discovery from the Chili's Guam matter" at the August 29, 2012 status hearing.

The Court hereby **GRANTS** Quality's Motion for Summary Judgment on the Consumer Protection Act claim as a matter of law. Any reference to GDTPA from Lonestar and Artero hereafter will subject them to penalties (*e.g.* monetary sanctions and/or dismissal).

/ / /

/ / /

/ / /

/ / /

---

[28] Order Granting in Part, and Denying in Part Defendant/Counterclaim Plaintiff's Motion for Leave to Amend its Answer and Counterclaim issued by the Court March 14, 2012.
[29] Decision and Order on Quality's Motion to Strike issued July 12, 2012.

## III.
## CONCLUSION

For all the reasons stated herein, the Court hereby **GRANTS** summary judgment on the Consumer Protection claim as a matter of law, and **DENIES** summary judgment against all other counterclaim causes of action.

**SCHEDULING CONFERENCE is set for** __FEB 0 6 2013__ at __3:30__ **p.m.**

**IT IS SO ORDERED** this __11__ day of January 2013



_____
**HONORABLE ELIZABETH BARRETT- ANDERSON**
Senior Judge Pro Tempore, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the Clerk of the Superior Court of Guam.
Dated at Hagatna, Guam

JAN 1 1 2013

Joseph L. Limba
Deputy Clerk, Superior Court of Guam